UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE PETITION OF UNIÓN FENOSA GAS,
S.A.,

For an Order to Take Discovery from The Bank
of New York Mellon Corporation pursuant to 28
U.S.C. § 1782 in Aid of a Foreign Proceeding.
-----------------------------------------------------------x

20-mc-171 (PKC)


OPINION AND ORDER

CASTEL, U.S.D.J.

      On April 8, 2020, this Court granted an ex parte application brought by Unión

Fenosa Gas, S.A. ("UFG") to take discovery in aid of a foreign proceeding.  28 U.S.C. § 1782.

UFG seeks documents and testimony from The Bank of New York Mellon Corporation ("BNY

Mellon") for an anticipated attachment application to be brought in pending proceedings in the

Courts of England and Wales against the Arab Republic of Egypt ("Egypt").

      Egypt moves to quash or modify the two subpoenas issued to BNY Mellon.  It

argues that UFG has not satisfied the mandatory criteria for section 1782 relief because the

evidence is not "for use" in a foreign proceeding, and, separately, that the Court should exercise

its discretion and quash the subpoenas because UFG could have sought discovery in the English

courts and the subpoenas are overbroad.  In the alternative, Egypt urges that the document

subpoena should be modified and the subpoena for testimony should be quashed.

      While the motion was sub judice, the Hon. Paul A. Engelmayer issued an Order

on a similar motion to quash brought by Egypt against UFG in connection with a discovery

application directed to the same foreign proceeding.  Union Fenosa Gas, S.A. v. The Depository

Trust Company, 20 Misc. 188 (PAE) (Order, May 29, 2020) (the "DTC Order").  In that case,

UFG sought discovery from the Depository Trust Company ("DTC") for the same purpose

described in the present application.  (Id.)  Judge Engelmayer concluded that UFG had satisfied the "for use" requirement of section 1782 but modified UFG's subpoena for documents and quashed its subpoena for live testimony.  (See id.)  Egypt and UFG have submitted letter-briefs addressing the DTC Order.  (Docket # 19, 20.)

    For the reasons that will be explained, the Court is persuaded by the reasoning of Judge Engelmayer's Order and adopts much of its reasoning.  The Court concludes that UFG has satisfied the mandatory factors required for a section 1782 application.  However, its subpoena for documents will be modified and its subpoena for testimony will be quashed.

BACKGROUND.

    The countries of Spain and Egypt are parties to the Agreement on Reciprocal Promotion and Protection of Investments between the Kingdom of Spain and the Arab Republic of Egypt (the "Treaty").  (Sun Dec. ¶ 2.)  UFG, a Spanish company, asserted that Egypt breached the Treaty by impairing its investments in Egypt.  (Id.)  On August 31, 2018, a tribunal convened pursuant to the Convention of the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention") issued an arbitral award of $2.013 billion in UFG's favor (the "Award").  (Sun Dec. ¶ 2.)

    The parties' submissions describe ongoing disputes related to the Award.  On November 19, 2018, UFG commenced proceedings in the Commercial Court, Queens Bench Division, of the Courts of England and Wales, through which it seeks to enforce the arbitral award (the "English Proceedings").  (Sun Dec. ¶¶ 2, 4.)  On December 19, 2018, the court in the English Proceedings issued an Order that registered the Award and gave it the force of an English judgment.  (Walker Dec. Ex. A.)  Egypt has contested UFG's service of that order. (Walker Dec. ¶¶ 5-6.)

On October 18, 2019, the ICSD Annulment Committee granted Egypt's request for a stay of the Award's enforcement, conditioned on Egypt posting a security.  (Sun Dec. ¶ 5.) The stay was lifted on January 24, 2020 due to Egypt's failure to post security.  (Sun Dec. ¶ 6 & Ex. A.)

On February 27, 2020, UFG and Egypt executed a series of agreements intended to resolve Egypt's liabilities arising out of the Award.  (Sun Dec. ¶ 7.)  The parties agreed that certain conditions precedent must be met in order for the settlement to become effective.  (Sun Dec. ¶ 7.)  An attorney declaration filed by UFG on May 13, 2020 states that the parties' attempt to settle their dispute has since "failed."  (Second Sun Dec. ¶ 2.)

On March 26, 2020, UFG filed an ex parte petition pursuant to 28 U.S.C. § 1782, seeking discovery from BNY Mellon in aid of the English Proceedings.  (Docket # 1.) According to UFG, certain prospectuses filed with the Luxembourg Stock Exchange state that Egypt is scheduled to make redemption payments on notes for its sovereign debt.  (Sun Dec. ¶¶ 8-9.)  One of the prospectuses identifies BNY Mellon as the notes' registrar.  (Sun Dec. ¶ 11.) UFG asserts that, as registrar, BNY Mellon likely possesses agreements "outlining the roles of the various agents and knowledge of the flow of funds resulting in these payments."  (Sun Dec. ¶ 11.)  An attorney declaration states that UFG "intends to move in the English Proceeding to execute funds belonging to Egypt that will be used to service and/or redeem the notes."  (Sun Dec. ¶ 10.)  UFG's document subpoena requests BNY's documents and communications related to Egypt's notes.  (Docket # 1.)

The Court granted UFG's application and issued one subpoena duces tecum and one subpoena ad testificandum to BNY Mellon.  (Docket # 8.)

DISCUSSION.

I.     The Mandatory and Discretionary Factors of 28 U.S.C. § 1782.

A district court may, "upon the application of any interested person," order a person within its jurisdiction to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ."  28 U.S.C. § 1782(a).  A section 1782 applicant must satisfy three mandatory factors by demonstrating that "'(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'"  Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (quoting Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012)); accord In re Accent Delight Int'l Ltd., 869 F.3d 121, 128 (2d Cir. 2017).

If the applicant satisfies the mandatory factors, the district court then weighs four discretionary factors listed in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004).  "These are: (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'"  Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264-65).

The Court's exercise of discretion "'is not boundless,'" and must be guided by the goals of "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  Mees, 793 F.3d at 297-98 (quoting Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83-84 (2d Cir. 2004)).

II.      UFG's Application Satisfies the Mandatory Factors of Section 1782.

Egypt urges that UFG does not seek discovery "for use" in a foreign proceeding, and therefore has not satisfied the second of the three mandatory factors.  Mees, 793 F.3d at 297. It does not dispute that BNY Mellon resides in this District or that UFG is an "interested person" relative to the English Proceedings.  See id.

Relying on Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24 (2d Cir. 1998), Egypt argues that the English Proceedings are not adjudicative in nature because the merits of SFG's dispute with Egypt were fully litigated before arbitration tribunal.  In Euromepa, the applicant sought discovery for use in a French bankruptcy action.  Id. at 28.  Based on its review of French law, the Second Circuit concluded that because the merits of the bankruptcy dispute had been fully adjudicated, discovery sought in connection with the judgment's enforcement was not "for use" in connection with a foreign proceeding.  Id. at 28.  It concluded that under the bankruptcy procedures of France, "nothing is being adjudicated" in relation to enforcing the judgment.  Id.  Egypt argues that, in essence, the holding in Euromepa applies to the English Proceedings because there is an "already extant judgment" in favor of UFG.  See id.

In support of its motion, Egypt has submitted the Declaration of Adam Jeremy Silver, a solicitor with eighteen years' experience practicing law in England and Wales.  (Silver Dec. ¶¶ 2-3.)  Silver's declaration describes England's procedures for enforcing a judgment,

specifically including a process wherein a judgment creditor may apply to the courts for a Third-Party Debt Order ("TPDO") directed to funds in a judgment debtor's bank account.  (Silver Dec. ¶¶ 5-14.)  To obtain a TPDO, the judgment creditor files an application to enforce the judgment against the judgment debtor, which courts review for a threshold factual showing.  (Id. ¶¶ 8-10.) The judgment debtor may object, and the English courts may preside over a hearing to decide whether to grant or modify the proposed order.  (Id. ¶¶ 12-13.)

In the <u>DTC</u> Order, Judge Engelmayer concluded that UFG had demonstrated that the discovery sought was "for use" in the English Proceedings, and therefore satisfied the mandatory factor for a section 1782 applicant.  (<u>DTC</u> Order at 5-11.)  He summarized recent authority from the Second Circuit and this District applying the principle that discovery is "for use" where it "is something that will be employed with some advantage or serve some use in the proceeding."  <u>See</u> <u>In re Accent Delight.</u>, 869 F.3d at 132.  Judge Engelmayer reviewed statements from Mr. Silver that are identical to passages of his declaration in this proceeding, including his observation that if a third-party debt order is disputed, "the Court will hear argument from the parties and render its decision or, if necessary direct that there be a trial of the relevant issues."  (DTC Order at 8-10; Silver Dec. ¶ 13.)  Although describing "the question as relatively close," Judge Engelmayer concluded that the Silver Declaration, which was filed by Egypt, described proceedings with an adjudicative quality.  (<u>DTC</u> Order at 9-10.)

For the reasons explained in the <u>DTC</u> Order, this Court agrees that the English Proceedings are adjudicative in nature.  Egypt's own expert describes an adversarial proceeding that includes judicial scrutiny of a TPDO application and a potential hearing.  In contrast to the French bankruptcy proceeding described in <u>Euromepa</u>, the proceedings described in the Silver Declaration are not merely administrative in nature.

This Court also adopts the persuasive reasoning of the DTC Order as to Egypt's argument that UFG's application should be denied because UFG has not yet brought an attachment application.  (DTC Order at 10-11.)  Egypt argues that any attachment proceeding by UFG is hypothetical, and that UFG's application for discovery describes only unnamed funds "somewhere in the eventual payment process" between Egypt and its noteholders.  (Mem. at 9.)  The "for use" requirement is satisfied when the applicant shows that the materials sought through discovery "are to be used at some stage of a foreign proceeding" that is "within reasonable contemplation" at the time the application is brought.  Mees, 793 F.3d at 301.  UFG has demonstrated that the English courts have registered the Award as a judgment and asserts that the parties' recent attempt to resolve their differences has "failed."  Declarations submitted by attorneys Sarah Y. Walker and Charlene C. Sun describe UFG's preparatory investigation and its intention to make an application for an attachment.  (Sun Dec. ¶¶ 8-11; Walker Dec. ¶¶ 8-11.)  This is sufficient to demonstrate that an attachment proceeding is within the reasonable contemplation of UFG.

The Court therefore concludes that UFG has demonstrated that the materials it seeks are "for use" in a foreign proceeding, and that it has satisfied the mandatory requirements of section 1782.

III.    UFG's Application Satisfies the Discretionary Factors of Section 1782, but Modification of Its Subpoenas Is Warranted.

Egypt also urges that UFG does not satisfy the first and fourth Intel factors, which look to whether the person from whom discovery is sought is a participant in the foreign proceeding, and whether the discovery sought is unduly intrusive and burdensome.  542 U.S. at 264-65.  On the first factor, Egypt argues that it is the real party in interest, since the subpoenas relate to Egypt's notes, funds and agreements, and that UFG should seek discovery through the

- 7 -

English Proceedings.  On the fourth factor, it argues that UFG seeks "ancillary and overbroad" information, such as documents about wire transfers made by Egypt or its representatives anywhere in the world.

As a threshold matter, the Court concludes that Egypt may properly challenge the subpoenas, even though they are addressed to BNY Mellon and any claimed undue burden would fall upon BNY Mellon and not Egypt.  As noted in the DTC Order, at 15-16, "parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties."  Application of Sarrio, S.A., 119 F.3d 143, 148 (2d Cir. 1997).  BNY Mellon has not appeared in this proceeding and has not asserted that UFG's requests are burdensome.  However, Egypt also challenges the intrusiveness and breadth of UFG's requests for its own communications.  The Court therefore concludes that Egypt has a cognizable interest in opposing UFG's subpoenas.

Egypt urges UFG's request is unduly intrusive and burdensome to the extent that it seeks "any and all documents or communications evidencing or concerning any Accounts" held in England's financial institutions that relate to the notes, including "[a]ny and all" such materials related to "any" accounts held by Egypt, and "[a]ny and all" of Egypt's property held in trust or escrow in connection with the accounts.  (Subp. ¶¶ 2, 4, 5.)  It also notes the breadth of a request for documents and communications concerning wire transfers made by Egypt or its representatives in connection with the notes.  (Subp. ¶ 3.)

In its opposition memo, UFG asserts that when it makes an attachment application to the English Courts, it will be required to include a proffer as to which England-based financial institutions are "in possession of the funds at any particular juncture, and it will need to explain how the agreements underlying the bonds treat questions of ownership and control of those funds

at each step in the payment process."  (Opp. Mem. at 12.)  UFG states that it needs "the agreements governing the handling and respective legal interest in those funds."  (Opp. Mem. at 12.)[1]

Based on UFG's description of the attachment proceedings and the relevant universe of documents that it seeks, the Court concludes that UFG's document request is overbroad.  The Court therefore narrows UFG's requests for documents consistent with the conclusions of the <u>DTC</u> Order, without geographic limitation.  (<u>See</u> DTC Order at 16.)  Specifically, UFG's opposition memo describes narrower categories of documents than those described in its subpoena.  The documents to be produced by BNY Mellon are therefore limited to "agreements governing the handling and respective legal interests in [the] funds" that "will be used by the paying agent to make debt service payments on the bonds . . . ."  (Opp. Mem. at 12.)  BNY Mellon is also to produce documents identifying those financial institutions through which "Egypt's funds will need to flow to or through . . . at any particular juncture" in order to make coupon and/or redemption payments on the notes.  (<u>Id.</u>)

Separately, UFG's subpoena for in-person testimony will be quashed.  As was the case in the <u>DTC</u> proceeding, UFG's opposition papers do not explain why it seeks such testimony or address Egypt's motion to quash the subpoena for testimony.

---

[1] Although the document requests in this matter and the <u>DTC</u> proceeding are near-identical, DTC and BNY Mellon have different roles in processing Egypt's payments to noteholders.  DTC is an agent in the payment chain between Egypt and noteholders, whereas BNY Mellon is the registrar of the notes.  (<u>See</u> Docket # 20.)  Egypt's letter-brief to the Court notes that BNY Mellon and DTC are distinguishable based on their respective roles as registrar and paying agent, but it does not explain how this distinction should affect the Court's tailoring of UFG's document requests. (<u>See</u> Docket # 20.)  Indeed, UFG's opposition memo also identifies the London branch of BNY Mellon as "the principal paying agent and fiscal agent" on the notes.  (Opp. Mem. at 12.)

CONCLUSION.

Egypt's motion to quash UFG's subpoena for documents is DENIED but its motion to modify the document request is GRANTED in part.  Egypt's motion to quash UFG's subpoena for testimony is GRANTED.

The Clerk is directed to terminate the motion.  (Docket # 11.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 23, 2020

- 10 -